FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 25, 2019

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STEVEN JAMES R., | No. 2:18-CV-00106-JTR |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney Dana Chris Madsen represents Steven James R. (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

On May 22, 2014, Plaintiff filed an application for Supplemental Security Income benefits. Tr. 20, 34, 150-55. Plaintiff alleged a disability onset date of April 1, 2007, Tr. 20, 150, 170, due to Depression, Anxiety, Schizophrenia, Paranoia, Shoulder Problems, Left Eye Blindness, and Knee Problems. Tr. 170. Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Jesse Shumway held a hearing on July 13, 2016, Tr. 39-67, and issued an unfavorable decision on August 26, 2016. Tr. 20-34. The Appeals Council denied review on January 26, 2018. Tr. 1-6. The ALJ's August 26, 2016, decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on February 26, 2018. ECF No. 1, 4.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on February 12, 1971 and was 43 years old on the date the application was filed, May 22, 2014. Tr. 20, 33, 150. He earned his GED in 2001. Tr. 171. In a Disability Report, Plaintiff reported that he has never worked, Tr. 170, but he reported to a medical provider that he has worked as an auto technician, tow truck driver, and dishwasher. Tr. 265. He reported to the medical provider that his longest job was as a tow truck driver and it lasted for about five years but ended in 1997 due to a situation unrelated to his impairments. Tr. 265. He reported that he was a dishwasher at a casino in 2007 but was fired after one year because he was late. Tr. 265. He also reported being fired from other jobs in the past for failing to show up. Tr. 265.

Plaintiff testified that he has been blind in his left eye since birth. Tr. 60. He reported that he dropped a transmission on his shoulder in 1987 but has never had surgery. Tr. 264. He reported that his knee problems are just due to old age. Tr. 264. Plaintiff testified that at one time in 2015 he could walk a mile every day, but he had not been able to do that for nine or ten months prior to the hearing due to pain in his right knee and left hip. Tr. 55. He testified that he has pain in his left shoulder, and five or six days out of the month he is unable to lift his left arm above his head. Tr. 58. He testified that for about one year prior to the hearing,

his fingers sometimes started tingling in his left hand. Tr. 56. He testified that he has a stabbing pain in his lower to middle back. Tr. 56-57. He testified that his right knee sometimes wants to buckle out from under him while he is walking, and that had been happening for four or five years prior to the hearing. Tr. 57. Plaintiff testified that his left hip began hurting within the last year before the hearing. Tr. 57. He testified that he cannot stand in line for longer than 20 minutes, and it is hard for him to bend or to squat and get back up. Tr. 58-59. Plaintiff testified that he does not get along with other people. Tr. 59. He testified that he never learned to deal with different attitudes. Tr. 59-60.

Plaintiff testified that he did not see a problem with a job where he would be able to sit for most of the day, would not have to lift more than ten pounds, and would not require any special skills, although he does not get along well with other people. Tr. 55. Plaintiff testified that he would not see a problem with a job where he did not have to interact very much with other people, but his body limits some of the things that he does. Tr. 55. Plaintiff testified that he would probably have to stand for a minute and stretch at least once or twice an hour if he was sitting for an eight-hour workday. Tr. 55-56.

Plaintiff testified that he has a girlfriend. Tr. 60-61. He reported that he spends time watching television or sitting on the front porch. Tr. 265. Plaintiff stated that he does not have a driver's license, but he gets rides with his girlfriend or rides the bus. Tr. 60, 265. He reported to a medical provider that he does laundry, prepares meals for himself, and grocery shops, Tr. 265, but he testified that he can sit and fold the laundry and he does not go grocery shopping very often, Tr. 61. He reported that he does well at managing money. Tr. 265. Plaintiff testified that his only medication is for high cholesterol. Tr. 62-63.

///

///

///

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of

entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On August 26, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date, May 22, 2014. Tr. 22.

At step two, the ALJ determined Plaintiff had the following severe impairments: left eye blindness, right knee dysfunction, left shoulder dysfunction, lumbar spine degenerative disc disease, obesity, major depressive disorder, and antisocial personality disorder. Tr. 22.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 23.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined that he could perform light work, but with the following limitations: he can stand and walk for four hours in combination in an eight-hour workday; he will have no depth perception and only occasional left peripheral field of vision; he needs the option to stand and stretch for one to two minutes after every hour of sitting; he can only occasionally push, pull, and reach overheard with his left upper extremity; he can only occasionally use foot controls with his right lower extremity

and frequently use foot controls with his left lower extremity; he can never crawl or climb ladders, ropes, scaffolds, stairs, or ramps; he can only occasionally perform all other postural movements; he cannot be exposed to hazards such as unprotected heights and moving mechanical parts; he can only occasionally be exposed to extreme heat; he cannot operate a motor vehicle; he requires a routine and predictable work environment that requires no more than simple decision-making; and he can have no contact with the public and only occasional contact with supervisors and coworkers, with no collaborative tasks. Tr. 25.

At step four, the ALJ determined Plaintiff had no past relevant work. Tr. 32.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, and based on the testimony of the vocational expert (VE), Plaintiff could perform other jobs present in significant numbers in the national economy, including the light exertion level jobs of office helper and mail clerk. Tr. 33. The ALJ thus concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act since May 22, 2014, the date the application was filed. Tr. 34.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) improperly discrediting Plaintiff's symptom claims; and (2) failing to properly consider and weigh the opinion evidence. ECF No. 14 at 15. Additionally, Plaintiff argues that these errors are harmful and a remand for an immediate award of benefits is warranted. ECF No. 14 at 17-18.

///
///
///
///

///

///

# DISCUSSION[1]

### A. Plaintiff's Symptom Testimony

Although Plaintiff notes that the ALJ improperly discredited Plaintiff's symptom testimony, his only argument pertains to the weighing of the medical opinion evidence. ECF No. 14 at 15-16. Plaintiff fails to assert any argument as to how the ALJ improperly discredited his symptom testimony. *Id*. Therefore, Plaintiff waived the argument. *See Carmickle*, 533 F.3d at 1161 n.2. The Ninth Circuit explained the necessity for providing specific argument:

> The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court. Particularly on appeal, we have held firm against considering arguments that are not briefed. But the term "brief" in the appellate context does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so. It is no accident that the Federal Rules of Appellate Procedure require the opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons.

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929-30 (9th Cir. 2003).[2] Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to challenge the issue in his opening brief, the Court declines to consider this issue.

The Court will not disturb the ALJ's determination regarding Plaintiff's symptom testimony.

### B. Medical Source Opinions

Plaintiff argues the ALJ failed to properly consider and weigh the opinion evidence. ECF No. 14 at 16-17. Specifically, Plaintiff asserts that the ALJ erred in giving more weight to the opinion of a non-examining, non-treating doctor over the opinion of treating doctors and the testifying medical expert. *Id*.

In weighing medical source opinions in a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: (i) treating physicians, who actually treat the claimant; (ii) examining physicians, who examine but do not treat the claimant; and (iii) non-examining physicians, who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. An opinion of a treating physician is given more weight than the opinion of a non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An examining physician's opinion is given more weight than that of a non-examining physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. If the ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record. *Valentine v. Comm'r of Soc. Sec. Admin.*,

---

[2] Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).

574 F.3d 685, 692 (9th Cir. 2009). The ALJ is required to set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. § 404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 416.913(d) (2013).[3] However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

**1.     Dr. Phillips**

William Phillips, M.D. conducted a DSHS physical evaluation of Plaintiff on October 4, 2013. Tr. 268-70. Upon examination, Dr. Phillips noted that

---

[3] Prior to March 27, 2017, the definition of a medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, was located at 20 C.F.R. § 416.913.

Plaintiff exhibited reduced left shoulder range of motion, but impingement signs were negative, and his grip, bicep, and triceps strength testing were equal bilaterally. Tr. 287. Dr. Phillips noted that Plaintiff's right knee exhibited tenderness over the medial joint line, there was small joint effusion, and moderate crepitus with flexion and extension. Tr. 287. Dr. Phillips noted that Plaintiff could not squat, but there was no sign of ligamentous laxity. Tr. 287. Dr. Phillips diagnosed congenital left eye blindness, chronic left shoulder pain, and chronic right knee pain. Tr. 269. He referred Plaintiff to behavioral health for depression. Tr. 269-70. He opined that Plaintiff was unable to meet the demands of sedentary work. Tr. 270. Dr. Phillips recommended that Plaintiff refrain from working for six months. Tr. 287. He anticipated that Plaintiff would eventually be able to return to light to medium work after knee and shoulder treatment. Tr. 287.

The ALJ accorded little weight to Dr. Phillips' opinion. Tr. 32. The ALJ found that Dr. Phillips' opinion was not consistent with the totality of the medical and non-medical evidence, which indicated that Plaintiff had mild physical examination findings and little to no abnormalities indicated on imaging. Tr. 31-32 (citing Tr. 251, 295-96, 305, 336, 343-44, 351, 374, 376, 427). Because Dr. Phillips' opinion was contradicted by State agency medical consultant Dr. Platter, Tr. 84-98, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2010).

An ALJ may reject limitations "unsupported by the record as a whole." *Batson*, 359 F.3d at 1195. The specific and legitimate reason standard can be met by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, [the ALJ] stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (conclusory reasons do not "achieve the level of specificity" required to justify an ALJ's rejection of an opinion); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a

physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("consider[ing] the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five" because "it is proper to read the ALJ's decision as a whole" and "it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (stating that "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing").

      The ALJ did not err by according little weight to Dr. Phillips' opinion due to inconsistencies with the totality of the medical and non-medical evidence. The ALJ's decision, read as a whole, outlined in detail the medical and non-medical evidence that lead to the conclusion to give little weight to Dr. Phillips' opinion. For example, the ALJ referenced Plaintiff's failure to seek treatment for his allegedly disabling conditions, his lack of persuasive explanation for failing to engage in such treatment, and Plaintiff's documented activities, as reasons for finding that his impairments were not as severe as alleged. Tr. 32. The ALJ also found that Plaintiff's absence of work history suggested that his medical impairments were not the primary explanation for his ongoing unemployment. Tr. 32. The ALJ found that there was no evidence of shoulder or knee MRIs, and no meaningful longitudinal clinical evidence. Tr. 29. Further, the ALJ noted that there was no record of any mental health treatment, and the two psychological evaluations closest to the adjudicative period were not supportive of disability. Tr.

32. Thus, by determining that Dr. Phillips' opinion was not consistent with the totality of the medical and non-medical evidence in the record, the ALJ provided a specific and legitimate reason for giving little weight to Dr. Phillips' opinion.

**2. Mr. Cantu**

Rogelio Cantu, P.A., conducted a DSHS evaluation of Plaintiff on April 30, 2014. Tr. 272-74. Upon examination, Mr. Cantu noted that Plaintiff exhibited diffuse left shoulder tenderness with palpation and reduced range of motion in all directions secondary to pain, but there were no distal sensory deficits. Tr. 305. Mr. Cantu reported that Plaintiff exhibited bilateral knee infrapatellar palpable tenderness, but there was no deformity, swelling, or instability. Tr. 305. Mr. Cantu diagnosed Plaintiff with left shoulder pain, bilateral knee pain, and left eye blindness. Tr. 273. He opined that Plaintiff was unable to meet the demands of sedentary work. Tr. 274.

Mr. Cantu conducted another DSHS evaluation of Plaintiff on March 21, 2016. Tr. 317-19. Upon examination, Mr. Cantu noted that Plaintiff walked with the aid of a cane and reported palpable tenderness in his right knee, but there was no deformity, swelling, or instability. Tr. 320. Mr. Cantu noted that Plaintiff had decreased range of motion sedentary to pain in his left shoulder. Tr. 320. Mr. Cantu reported that prior imaging of Plaintiff's knee and shoulder were unremarkable, and he recommended weight loss for his left knee pain and physical therapy for his left shoulder pain. Tr. 320. Mr. Cantu diagnosed Plaintiff with left shoulder pain, right knee pain, and left eye blindness. Tr. 318. Mr. Cantu revised his 2014 opinion and opined that Plaintiff could perform sedentary work. Tr. 319.

The ALJ accorded little weight to Mr. Cantu's opinion. Tr. 32. The ALJ found that his opinion was not consistent with the totality of the medical and non-medical evidence, which indicated that Plaintiff had mild physical examination findings and little to no abnormalities indicated on imaging. Tr. 31-32 (citing Tr.

251, 295-96, 305, 336, 343-44, 351, 374, 376, 427). As a physician's assistant,[4] Mr. Cantu was defined as an "other source," and was not entitled to the same deference as acceptable medical sources. *See Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015); *Molina*, 674 F.3d at 1111. Although required to consider evidence from "other sources," an ALJ may discount testimony from other sources by providing reasons "germane to each witness for doing so." *Molina*, 674 F.3d at 1111.

The ALJ did not err by according little weight to Mr. Cantu's opinion due to inconsistencies with the totality of the medical and non-medical evidence. An ALJ may reject limitations "unsupported by the record as a whole." *Batson*, 359 F.3d at 1195. The ALJ's decision, read as a whole, outlined in detail the medical and non-medical evidence that lead to the conclusion as to Mr. Cantu's opinion. As discussed *supra*, the ALJ referenced Plaintiff's failure to seek treatment for his allegedly disabling conditions, his lack of persuasive explanation for failing to engage in such treatment, his documented activities, his lack of work history, absence of shoulder or knee MRIs, absence of meaningful longitudinal clinical evidence, absence of record of any mental health treatment, and the two psychological evaluations closest to the adjudicative period were not supportive of disability, as reasons for finding that Plaintiff's impairments were not as severe as alleged. Tr. 32. Thus, by determining that Mr. Cantu's opinion was not consistent

---

[4] Prior to March 2017, physician's assistants were not classified as an "acceptable medical source." See 20 C.F.R. § 416.902(a)(8) (including licensed physician's assistants as acceptable medical sources for impairments within their licensed scope of practice "only with respect to claims filed . . . on or after March 27, 2017"). Instead, physician's assistants were defined as "other sources" not entitled to the same deference as an "acceptable medical source." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

with the totality of the medical and non-medical evidence, the ALJ provided a germane reason for giving little weight to Mr. Cantu's opinion.

### 3. Dr. Smiley

Robert Smiley, M.D., testified as a non-examining medical expert at the administrative hearing. Tr. 43-52. Dr. Smiley testified that Plaintiff was capable of performing work at a sedentary capacity. Tr. 49. He opined that Plaintiff could not stand and walk for six hours in an eight-hour workday. Tr. 50. Dr. Smiley testified that Plaintiff would benefit from a sit-stand option. Tr. 51. He testified that Plaintiff could not climb ladders, ropes, or scaffolds, or crawl. Tr. 49. Dr. Smiley testified that Plaintiff could occasionally perform all other postural movements and he could frequently use his right hand, but he did not know how often Plaintiff could use his left hand. Tr. 49. Dr. Smiley opined that Plaintiff could frequently use foot controls if he was sitting. Tr. 49. He testified that Plaintiff could not work at unprotected heights or around dangerous machinery. Tr. 49. Dr. Smiley testified that Plaintiff could perform an occupation with monocular vision. Tr. 49.

The ALJ accorded some weight to Dr. Smiley's opinion but found that he extrapolated slightly greater restrictions than warranted by Plaintiff's "meager medical record." Tr. 29. The ALJ noted that, as Dr. Smiley acknowledged, Plaintiff's failure to seek treatment resulted in a record that simply was not very definitive, lacking, for example, shoulder and knee MRIs and meaningful longitudinal clinical evidence. Tr. 29, 44; *see* Tr. 44 (Dr. Smiley testified, "I did not find a shoulder MRI and I have problems understanding why I didn't find an MRI, and why there's not been any recommendations for an arthroscopy"); *Id.* (Dr. Smiley testified, "Again, I did not find a knee MRI and the same why applies here, too"); *Id.* (Dr. Smiley testified, "Again, I didn't find an ENG, an electric diagnostic study, and so that makes it difficult to objectively evaluate"); Tr. 45 (Dr. Smiley testified that he can "go by physical exams and I can go by symptoms, but…it's

always nice and much more objective to have imaging"). The ALJ stated that the lack of definitive medical evidence required a review of other evidence of Plaintiff's actual functioning, work history, testimony about his abilities, and explanation for failure to seek medical treatment, in evaluating the extent of his symptoms. Tr. 29-30. The ALJ indicated that Dr. Smiley did not consider this non-medical evidence and did not hear Plaintiff's testimony regarding his abilities, as well as his extreme passivity in seeking medical treatment for his medical impairments. Tr. 30 (citing Tr. 52-63, 251, 295, 336, 344, 374, 376, 427). For these reasons, the ALJ did not give great weight to Dr. Smiley's opinion. Tr. 30.

An ALJ may reject limitations "unsupported by the record as a whole." *Batson*, 359 F.3d at 1195. Given the lack of definitive medical evidence, the ALJ looked to other evidence of Plaintiff's actual functioning, work history, testimony about his abilities, and explanation for failure to seek medical treatment, in evaluating the extent of his symptoms. Tr. 29-30. The ALJ found that Dr. Smiley did not consider this non-medical evidence and did not hear Plaintiff's testimony regarding his abilities and his extreme passivity in seeking medical treatment for his medical impairments. Tr. 30. Finding that Dr. Smiley extrapolated slightly greater restrictions than warranted by the record was a specific and legitimate reason for discrediting Dr. Smiley's opinion.

### 4. Dr. Platter

On December 9, 2014, State agency medical consultant, Howard Platter, M.D., opined that Plaintiff was capable of performing at light exertional capacity. Tr. 84-98. He opined that Plaintiff was limited in his ability to push and pull with his left upper extremity and his right lower extremity. Tr. 91. Dr. Platter opined that Plaintiff could frequently climb ramps and stairs and he could occasionally climb ladders, ropes, and scaffolds. Tr. 92. He also opined that Plaintiff had limited overheard reaching with his left upper extremity. Tr. 92. Dr. Platter opined that Plaintiff also had visual limitations on the left. Tr. 92.

The ALJ accorded great weight to Dr. Platter's opinion, except for the visual limitation. Tr. 30. As Defendant indicates, Plaintiff does not challenge the ALJ's evaluation of Dr. Platter's opinion. ECF No. 15 at 5 (citing ECF No. 14). The opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ found that Dr. Platter's opinion was consistent with the medical evidence of record, which indicated no radiculopathy of back symptoms and no imaging abnormalities for Plaintiff's knee or shoulder. Tr. 30 (citing Tr. 251, 295, 323, 336, 351, 374, 376, 427). The ALJ determined that Dr. Platter's opinion concerning Plaintiff's visual limitations was not functionally specific, thus, the ALJ accorded little weight to that part of the opinion. Tr. 30, 92. The ALJ did not err by determining that Dr. Platter's opinion constituted substantial evidence in support of the ALJ's RFC finding.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision should be affirmed. Therefore, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED February 25, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE